## JESSOP v. MILLER.

### September, 1864.

The surety in the undertaking given to obtain a provisional remedy in an action, is not incompetent as a witness, for he is not a person for whose benefit the action is prosecuted or defended.

Assignees for benefit of creditors, who innocently and without notice take possession of chattels of which their assignor tortiously acquired possession, are not liable in an action by the true owner for their recovery, without demand and refusal.*

A demand should be made on each of several such assignees; but on proof of demand on, and refusal by, either one, plaintiff may recover against him without proof of a demand on the other.

A refusal to deliver plaintiff's property to him upon demand, may be left to the jury as presumptive evidence of a conversion before the bringing of the action,† although the demand was made after the papers in the action were delivered to the sheriff.

Upon the question of the validity of a sale made on condition as to payment, the condition not being performed, the intent of the purchaser to pay or not is immaterial, where no fraud is imputed to him, or where he testified that he had no intention of taking the goods; and it is not error to exclude an inquiry as to whether he intended to pay.

Thomas and Sidney Jessop sued Stephen C. Miller, George N. Furguson and Miles White, in the supreme court, to recover possession of nine cases of steel, belonging to plaintiffs, which they alleged defendant had become possessed of and wrongfully detained.

---

* Compare King v. Fitch, in this series; and Chambers v. Lewis, 28 *N. Y.* 454.

† Cited in McEntee v. N. J. Steamboat Co., 45 *N. Y.* 34.

White was a manufacturer of steel, and purchased, or negotiated with plaintiffs, to purchase from them the steel now in suit, and in consequence of their negotiation, they sent the steel to his factory. White broke and partly manufactured the steel, and subsequently failed, and made an assignment of all his property to Miller and Furguson, the other defendants. The plaintiffs then commenced this action to regain the steel, and took proceedings of claim and delivery, as a provisional remedy under the Code of Procedure, for that purpose. The papers in the suit were delivered to the sheriff for service before any demand was made for a return of the steel.

The question on the trial was whether plaintiffs made merely a conditional sale, as they alleged, to take effect only on the delivery to them of White's notes indorsed by the firm of Johnson, Cammel & Co., of New York; or whether, as Miller and Furguson claimed, the sale was absolute, and vested the title in White without payment. Miller and Furguson also insisted that if the sale were originally conditional, the condition had been waived. Plaintiffs gave evidence in support of their claim. Their principal witness was their agent, Stagg, who was their surety on the undertaking given on their part in the proceedings of claim and delivery. He was objected to on this ground, but admitted by the court.

The receipt of the nine cases at White's shop in October or early in November, 1852, was admitted. The assignment was made December 8, following, and was expressed to convey all White's property.

On the part of the defendants, White was called as a witness, and testified, among other things, that he only ordered one case of steel, and that the nine cases in suit were sent him in addition. He was then asked by defendants' counsel, "When you bought the steel did you intend to pay for it?" This question was excluded. Other details of the evidence appear in the opinion.

Among other instructions, the court charged the jury, that if they should be satisfied from the evidence that the sale to White was not absolute, and that at the commencement of the suit there was a detention of the property by defendants, plaintiffs were entitled to recover. Also that it was for the

Jessop *v.* Miller.

the jury to say from the evidence, what amount of the steel had come to the possession or control of Miller & Furguson, as assignees of White.

To the latter instruction, as also to a refusal to charge specifically that the assignees were not liable for steel not shown to be actually in their control at the commencement of the action, and that White was not liable, there being no evidence that he then had possession or control,—defendants severally excepted. Other exceptions, and the motion for nonsuit, appear in the opinion.

The verdict found for plaintiffs for nine hundred and two dollars and seventy-eight cents, was set aside at special term, on the ground that the court should have charged as requested, that the assignment, alone, was not enough to show that the assignees had possession of the assigned property, and that there was no evidence that White had anything to do with it after the assignment, nor of a joint conversion by White and the assignees; and that the latter were not liable till after refusal to deliver on a demand made.

*The supreme court,* at general term, were of opinion that the exceptions to the refusals to charge were insufficient to raise these questions, inasmuch as neither request covered a precise and single ground of defense, stated separately from other points of law or facts; but that there ought to be a new trial because there was no evidence to sustain a verdict of a *joint detention ;*—that the plaintiffs' claim, that to make this ground available, there should have been a pleading of the misjoinder of the defendants, could not be allowed; for the action, sounding in tort, was in its nature several, and there may be a verdict for one defendant and against another; and the verdict should be determined not by the pleadings, but by the proofs;—that the assignment was an open, avowed, general assignment, for the benefit of creditors; and there was no evidence that it had particular reference to the property in question, or to a covering up of either the title to or the possession of it.

From this decision the plaintiffs appealed, stipulating for judgment final against them, if the order should be affirmed.

*H. G. Wheaton,* for plaintiffs, appellants;—As to witness, cited Neas *v.* Mercer, 15 *Barb.* 375, 382 ; Catlin *v.* Hanson, 1 *Duer,* 306; Western *v.* Hatch, 9 *How. Pr.* 444. As to conversion, Allen *v.* Crary, 10 *Wend.* 349; Brockway *v.* Burnap, 16 *Barb.* 309; Ely *v.* Ehle, 3 *N. Y.* (3 *Comst.*) 506; Van Neste *v.* Conover, 20 *Barb.* 547; Ward *v.* Woodburn, 27 *Barb.* 346; Douglass *v.* Howland, 24 *Wend.* 35, 45. As to the demand and joint liability, Acker *v.* Campbell, 23 *Wend.* 372; Waterbury *v.* Westervelt, 9 *N. Y.* (5 *Seld.*) 598.

*John K. Porter,* for defendants, appellants;—As to witness. cited Catlin *v.* Hanson (*above*); Howland *v.* Willett, 9 *N. Y.* (5 *Seld.*) 170. That demand after suit was not sufficient, Barrett *v.* Warren, 3 *Hill,* 348; Fuller *v.* Lewis, 13 *How. Pr.* 219.

BY THE COURT.—MULLIN, J.—The first alleged error presented by the record in this case is the admission of Stagg as a witness for the plaintiff, he being, as it is claimed, a person for whose immediate benefit the action is prosecuted, having signed the undertaking required by the Code to be given in proceedings for the claim and delivery of property.

Stagg could derive no benefit whatever from the suit, except by being released from his undertaking. He had an interest which, under the former practice, would have excluded him from being a witness, until another undertaking had been substituted. Interest is no longer a ground for exclusion. Stagg had no power, as surety in the undertaking, to control the suit, nor to appropriate to his own use any part of its proceeds. The action was not prosecuted for his benefit, directly or indirectly If a person can neither control the action nor appropriate its proceeds, it is difficult to understand how it can be said to be prosecuted for his benefit. The defendant's counsel seems to think that Stagg was to be treated as if he had indemnified some person for the taking of the property. By section 209 of the Code, the undertaking is for the prosecution of the action, the return of the property, upon the payment to the defendant of such sum as may be recovered against the plaintiff. The sureties are to be approved by the sheriff, and he is liable to

Jessop *v.* Miller.

the defendants for the sufficiency of the sureties, until the objection to them is waived, or they have justified, or new sureties be substituted and been justified. The action not being against the sheriff, indemnity to him could not convert the surety into a person for whose immediate benefit the suit was prosecuted. And indemnity to the defendants in the action, could not work out any greater change in the relations of the witness to the action. The case of Howland *v.* Willett, 9 *N. Y.* 170, has no application to the case. In that case the defendant was sued as sheriff, for unlawfully taking the plaintiff's property, and Edward Dwight was offered as a witness on the part of the defendant, and it appearing that he was a partner in the firm by which the judgment was recovered, on which the property in question was seized, and that the judgment had been assigned to said Dwight, and that he claimed the property and had indemnified the sheriff, it was held that he was a person for whose immediate benefit the action was prosecuted, and that he was, therefore, incompetent. There is no resemblance in the cases. The witness Stagg had not indemnified any person to the litigation, unless it was the defendant, and such indemnity does not affect the question of the competency of the indemnitor as a witness.

When the person offered as a witness is legally or equitably the owner of the property and entitled to its proceeds, or was entitled himself to the benefits of litigation by indemnity given to another, he is a person for whose benefit the action is prosecuted or defended. If he is a mere surety to enable another to prosecute or defend an action he is not a person for whose benefit the action is prosecuted or defended, and is not rendered incompetent as a witness under section 299 of the Code.*

The counsel for the defendants Miller and Ferguson, on the close of the plaintiff's case, moved to dismiss the complaint on the grounds that the goods in question were sold upon the credit of Johnson, Cammel & Co., and not of White, and that no demand was made on either of the assignees until after suit

---

* This section has since been amended so as to admit parties without reference to interest, except as against executors, &c.

commenced. The motion was denied, and the defendant's counsel excepted.

The witness Stagg had testified, before the plaintiffs rested, that he was one of the plaintiff's agents, and as such negotiated the sale to White; and that White offered to him, as indorsers of his paper for the steel he might purchase, the firm o Johnson, Cammel & Co., and that he told White he would accept them as indorsers, and it was upon the condition that they should become such that the sale of the steel was made. It is a very grave mistake, therefore, to say that the sale was made on the credit of White alone, and not on that of Johnson, Cammel & Co., also.

If the steel was held on a condition that was not complied with, the title never passed from the plaintiffs, and White acquired no title thereto, nor could he convey any to the assignees. Acker v. Campbell, 23 Wend. 372; Leven v. Smith, 1 Den. 571; Haggerty v. Palmer, 6 Johns. Ch. 437; The same v. Duane, 1 Paige, 321; Cary v. Hotailing, 1 Hill, 311; Smith v. Lynes, 5 N. Y. 41; Olmstead v. Hotailing, 1 Hill, 317.*

In order to maintain an action against White, no demand was necessary. His act was tortious, and he was liable in trespass for the unlawful taking. Farrington v. Payne, 15 Johns. 431.

But as the assignees acquired possession of the property innocently, without notice of any defect of title in White, an action could not be maintained against them until after demand and refusal. Hall v. Robinson, 2 N. Y. 293.

The assignees not being partners, a demand must be made upon each, in order to maintain a joint action. Mitchell v. Williams, 4 Hill, 13. It is not pretended that any demand was made of Ferguson, and hence the action as against him was not sustained. There was evidence sufficient to carry the case to the jury on the question whether a demand was made of the property of Miller, and whether there was a refusal by him; and the jury must have found such demand and refusal, as without it, there was no evidence of detention by the assignees, referred to by the judge in his charge to the jury.

---

* See also Ballard v. Burgett, 40 N. Y. 314, and cases there cited.

I do not understand the respondent's counsel to contend that there was not a demand and refusal by Miller; but the objection is that it was after suit brought; the papers in suit having been delivered to the sheriff at 11 A. M., and the demand not being made till 1 P. M. of the same day.

A demand and refusal do not constitute a conversion of property. They are but evidence of a conversion, and the conversion of which they are the evidence is prior to the demand and refusal. 2 *Phil. on Ev.* 226; *Cow. & Hill's* edition. The learned authors say: "The refusal of the defendant may be evidence of a conversion at an antecedent period; as when deeds were in the possession of the defendant prior to Michaelmas term, and the demand and refusal were proved to have been made on the day after that time, the court held it to be evidence of a conversion before the time." Milton *v.* Endlestom, 5 *Barn. & Ald.* 87, was trover for certain deeds that were shown to have been in the defendant's hands before the Michaelmas term. The bill was entitled generally of that term, the memorandum showed it was filed on November 28, but it was not in fact filed until December 24. The demand was made on November 29. The evidence of the actual time of filing was objected to as contradicting the record. But the court held it admissible; and they say a demand and refusal is evidence of a prior conversion; and as the deeds were in the defendants' hands prior to Michaelmas term, there was evidence for the jury of a converion before that period.

In Morris *v.* Pugh, 3 *Burr.* 1241, the same question arose as to whether the actual time of filing the bill could be shown in opposition to the recital in the record; and it was held that it might. And Lord MANSFIELD takes occasion to say: "Refusal upon demand is not an actual conversion, but evidence of it. If the refusal on May 2 had really been after the action brought, I ought to have left it to the jury as evidence of a conversion before the bringing of the action."

In the case before us it is shown that the assignment was made and delivered on December 8. The action was commenced on or about December 17, and it was on the same day the demand was made. The demand and refusal were, under the cases cited, evidence to go to the jury of a conversion as

early as December 8; that is to say, refusal to deliver to the true owner on demand, is evidence, in the absence of all explanation, that the party refused it with the intent to set the real owner's right at defiance. The jury was justified in finding a conversion before suit brought. Miller is, therefore, liable to the plaintiffs for the value of the property.

It was held in Nicholas v. Michael, 23 N. Y. 264, that the fraudulent vendee of goods, and his assignee thereof for the benefit of creditors, are liable to a joint action by the vendor to recover the possession. White was, therefore, liable jointly with Miller and Ferguson for a conversion of the steel, and as to him no demand was necessary.

The court was requested to charge the jury, that there was no evidence to warrant them in finding that the whole of the steel claimed in this action ever came to the possession, or under the control of, the defendants, Miller & Ferguson. The court declined so to charge. All the steel sold by the plaintiffs to White was received by him and taken to his shop. There is no proof that he sold a pound of it, or that, by the course of business in his shop, a sale of any part of it might be inferred. As between the plaintiffs and White, there could be no doubt but that at the time of the assignment he had in his possession all the steel bought of the plaintiffs. And it seems to me the inference is equally strong against the assignees. By the assignment they took all personal property, tools, machinery, &c., in the ax factory, and all iron, steel, stock and materials for being manufactured, and all axes and other edged tools, manufactured or in process of being manufactured, and stock partly manufactured, and all manufactured articles in the hands of commission merchants, or other dealers, &c., &c. If none had been sold by White, then all the steel was on hand in bars, manufactured, in process of manufacture, or in the hands of dealers. The plaintiffs gave all the evidence as to the possession of the property by the assignees which the nature of the case admitted of, and it was in the power of the defendants to prove beyond all doubt how much of it passed to them under the assignment. And failing to give any proof, I think the jury were justified in presuming that all the property purchased of the plaintiff passed to the assignees. I am of opinion,

Jessop *v.* Miller.

therefore, that the branch of the charge under consideration was right.

The only remaining question is, whether the question put to White, as to whether, when he purchased the steel, he intended to pay for it, was properly excluded. I think it was, for two reasons, viz: 1. The inquiry is only competent when the intention of the witness at the time, and in relation to the subject matter of the inquiry, is material. Seymour *v.* Wilson, 14 *N. Y.* 567; Griffin *v.* Marquardt, 21 *Id.* 121; Forbes *v.* Waller, 25 *Id.* 433. There was no fraud imputed to White in making the sale, nor was there any issue in the pleadings as to a fraudulent intent, and hence a case was not made that rendered it either proper or necessary to inquire into White's intentions when he made the purchase. 2. White denied ever having made any contract with the plaintiffs' agents for the purchase of the steel. He says he talked with them about purchasing more than one box, but no agreement was made in relation to them, and he did not know that the plaintiffs' agents contemptated sending forward more than the single box until he was informed by his teamster that ten boxes were at Troy. Then, for the first time, did he assent to take the additional boxes. Whether he had intention not to pay for property forced upon him, as he insists, by the plaintiffs' agents, could not be material, and the inquiry was properly excluded.

The result of my examination of this case is, that the order as to Miller and White must be reversed, and that as to the defendant Ferguson, it should be affirmed, and judgment absolute under the stipulation, in favor of Ferguson against the plaintiffs.

A majority of the judges concurred.

Judgment accordingly, with costs.